IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SUSIE MARTINEZ, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-CV-883-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.  STATEMENT OF THE CASE**

Plaintiff Susie Martinez ("Martinez") filed this action pursuant to Section 405(g) of Title

42 of the United States Code for judicial review of a final decision of the Commissioner of

Social Security ("the Commissioner") denying Martinez's application for disability insurance

benefits ("DIB") under Title II of the Social Security Act ("the Act").  On August 18, 2008,

Martinez applied for DIB, alleging that she had been disabled since January 19, 2004.[1]

(Transcript ("Tr.") at 46, 135.)  Her applications were denied initially and on reconsideration.

---

[1] Martinez last met the disability insured status requirements of Title II on March 31, 2007.  (Tr. 14); *see* 20
C.F.R. § 404.131.

1

(Tr. 47, 55.) Martinez sought review from an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ Rita R. Carroll on September 16, 2009. (Tr. 25-44.) On January 26, 2010, the ALJ issued an unfavorable opinion finding that Martinez was not disabled during the relevant time period. (Tr. 14-21.) Martinez filed a written request for review, but the Appeals Council denied her request on September 1, 2010, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-6.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.* of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th

2

Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations.  20 C.F.R. § 416.920(d); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing").  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.  *Id.* § 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* § 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*  This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

### III. ISSUE

Martinez raises the following issue:

> Whether the ALJ applied the correct severity standard and properly evaluated Martinez's mental impairments at Step Two.

(Plaintiff's Brief ("Pl. Br.") at 2.)

### IV. ADMINISTRATIVE RECORD

#### A.  Administrative Hearing

At her September 16, 2009 hearing before the ALJ, Martinez was represented by an attorney. (Tr. 25-44.) Martinez testified on her own behalf. (*Id.*) A vocational expert ("VE"), Malloy Kelly, was also present. (*Id.*) Before Martinez testified, her attorney explained to the ALJ that Martinez had suffered amputation of her left leg in 1986 as a result of a car accident. (Tr. 29.) He told the ALJ that Martinez had since developed a series of physical conditions, as well as an emotional condition, that ultimately rendered her disabled. (*Id.*) He also claimed that Disability Determination Services ("DDS") failed to make an effort to properly develop her medical file. (Tr. at 29-30.)

Martinez testified that she was 49 years old at the time of her hearing before the ALJ, that she had graduated high school and that she had completed two years of vocational school for dental assisting. (Tr. 35.) She told the ALJ that she had not worked since January 19, 2004. (Tr. 35-36.) She explained that she originally stopped working as a dental assistant in 2001 when her mother, who had developed cancer, went into hospice care. (Tr. 36.) Martinez testified that she was unable to go back to work because she had gained weight and her prosthetic leg no longer fit. (*Id.*) When the ALJ asked her whether she tried to get a new prosthetic, Martinez said she

4

had not because she did not have the money to pay for it. (Tr. 36.) She explained that her husband was a police officer, and that a lot of places would not give her a new prosthetic because her husband had an income. (*Id.*) She also indicated that the place that provided her first prosthetic would not pay for a new one because she was no longer working. (*Id.*) She told the ALJ that she had no medical treatment records from that time, but that she had not had a prosthesis since 2001. (*Id.*) Martinez said she had developed back problems with the prosthesis, which slowly went away as she stopped using it and began using crutches, but that her use of crutches led to hand problems. (Tr. 36-37.) Martinez explained that the deductible she and her husband would have to pay for a prosthesis through his insurance was $3000, each year, per person, and that they could not financially afford to purchase a prosthesis. (Tr. 37.)

Martinez testified that she took a number of medications, including blood pressure medication, Lexapro for her depression, Pristiq, another antidepressant, Metformin for diabetes, and Detrol for bladder control. (Tr. 37-38) She testified that each of the medications was being prescribed by her primary care physician, Dr. Doyle Gallman ("Gallman"). (Tr. 38.) Martinez said Gallman had been treating her since 2005, and that she saw him regularly, every four or five months. (*Id.*)

When asked by the ALJ about her daily activities, Martinez told him that her husband did the cooking and her daughter helped with the laundry and that there was a woman who came to clean the house. (Tr. 39.) Martinez said that she did not attend her daughter's activities or church unless her husband was with her. (Tr. 40.) Martinez told the ALJ that she experienced panic attacks. (*Id.*) She testified that she could take care of her own bathing and grooming. (*Id.*) Martinez also told the ALJ that she watched a lot of television and that she napped during the

day. (Tr. 41.)  Although Martinez testified that her appetite was "not good," she told the ALJ

that she weighed 220 pounds and was 5'3" tall, and Martinez acknowledged that she was very

overweight. (Tr. at 41-42.)  She further testified that she was unable to go out of her home alone

because she had panic attacks and was always falling and her motorized wheelchair was very

heavy, so she could not lift or carry it without her husband's help. (Tr. 43.)

**B.   The ALJ's Decision**

The ALJ, in her January 26, 2010 decision, set forth the five-step sequential evaluation

process for determining whether a person is disabled. (Tr. 14-21.)  In outlining this process, the

ALJ noted that at Step Two she must, in essence, determine whether the claimant had a "severe,

medically determinable impairment or combination of impairments." (Tr. 15.)  She explained,

citing to 20 C.F.R. §§ 404.1521 and Social Security Rulings ("SSR") 85-28, 96-3p and 96-4p,

that "[a]n impairment or combination of impairments is 'severe' within the meaning of the

regulations if it significantly limits an individual's ability to perform basic work activities." (*Id.*)

She further explained that "[a]n impairment or combination of impairments is 'not severe' when

medical or other evidence establish only a slight abnormality or combination of slight

abnormalities that would have no more than a minimal effect on an individual's ability to work."

(*Id.*)

At Step One, the ALJ found that Martinez had not engaged in substantial gainful activity

during the period from her alleged onset date of January 19, 2004 through her date last insured of

March 31, 2007. (Tr. 16.)

6

At Step Two, the ALJ found that Martinez had the severe impairment of amputation below the knee. (Tr. 16, citing 20 C.F.R. § 404.1520(c).) The ALJ stated that she "considered the directive set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)" in reaching her determination. (Tr. 16.)

After finding that Martinez had the severe impairment of amputation below the knee, the ALJ addressed Martinez's allegations that she had functional limitations stemming from her depression. (Tr. 16.) She noted that, other than Martinez's brief receipt of antidepressants from Gallman, from May 2006 to August 2006, there was no evidence of treatment for depression in her medical records. (*Id.*) She then concluded that "[s]ince the objective medical evidence of record fails to establish that claimant's depression has resulted in more than a minimal limitation in the claimant's ability to perform basic mental work activities, it is therefore nonsevere." (*Id.*)

The ALJ explained that in making her determination regarding the severity of Martinez's depression, she considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments, 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16-17.) The ALJ then addressed the four broad areas. First, the ALJ found that Martinez had mild limitation in activities of daily living, noting that she was able to care for her personal hygiene and grooming. (Tr. 17.) Then the ALJ found that Martinez had, at most, mild limitation in the area of social functioning, noting that Martinez reported attending church, visiting neighbors, and attending her child's school activities with her husband. (*Id.*) Third, the ALJ found that Martinez had, at most, mild limitation in the area of concentration, persistence or pace, citing the fact that Martinez enjoyed watching television shows and the fact that she denied any difficulty in maintaining her concentration and attention.

7

(*Id.*) Finally, the ALJ determined that Martinez had not experienced any episodes of extended decompensation, the fourth broad functional area. (*Id.*) The ALJ explained that because Martinez's medically determinable mental impairment caused no more than "mild" limitation in any of the first three functional areas and "no" extended episodes of decompensation, it was nonsevere. (*Id.*, citing 20 C.F.R. § 404.1520a(d)(1).) The ALJ specified that the limitations contained in her assessment were not a residual functional capacity ("RFC") assessment, but rather were used to rate the severity of Martinez's mental impairments at Steps Two and Three. (*Id.*) The ALJ also found that Martinez's allegations of carpal tunnel syndrome were unsupported by evidence of any medically determinable impairment in the record. (*Id.*)

At Step Three, the ALJ found that Martinez did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526). (Tr. 18.) Then she determined Martinez's RFC. (*Id.*) The ALJ found that Martinez had the RFC to perform at least a full range of sedentary work as defined in 20 C.F.R. § 404.1567(b). (*Id.*) Moreover, she found that Martinez was capable of lifting and carrying up to 10 pounds frequently and that she was able to stand/walk for two of eight hours and sit for six of eight hours. (*Id.*)

At Step Four, the ALJ found that Martinez was unable to perform any of her past relevant work. (Tr. 19, citing 20 C.F.R. § 404.1565.) At Step Five, the ALJ found that, considering Martinez's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through her last insured date. (*Id.*, citing 20 C.F.R. §404.1569 and 404.1569(a).) Ultimately, the ALJ found that Martinez was

8

not under a disability, as defined in the Social Security Act, at any time from January 19, 2004,

her alleged date of onset, through March 31, 2007, her date last insured.   (20 C.F.R.

§404.1520(g).)

## V.  DISCUSSION

Martinez claims that the ALJ erred when she failed to apply the appropriate standard for

severity at Step Two regarding Martinez's mental impairments. (Pl.'s Br. at 2-7.)  She argues

that, although the ALJ cited to *Stone* by name, she failed to articulate and apply the correct legal

standard.  (*Id.*)  Martinez also argues that the ALJ erred when she failed to find that Martinez's

depression was also a severe impairment. (*Id.*)

The Commissioner has issued regulations that define a severe impairment as one which

significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R.

§§ 404.1520(c), 416.920(c).  *See also* 20 C.F.R. §§ 404.1521(a), 416.921(a).  The Fifth Circuit,

however, has found that a literal application of that definition is inconsistent with the statutory

language and legislative history of the Social Security Act. *Stone v. Heckler*, 752 F.2d 1099,

1104-05 (5th Cir. 1985) Instead, the Fifth Circuit has established the following standard for

determining whether a claimant's impairment is severe:  An impairment is not severe only if it is

a slight abnormality having *such minimal effect* on the individual that it would not be expected to

interfere with the individual's ability to work, irrespective of age, education or work experience.

*Stone*, 752 F.2d at 1101 (emphasis added).  The *Stone* severity standard does not allow for *any*

interference with work ability, not even minimal interference. *Scroggins v. Astrue*, 598 F. Supp.

2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a

claimant's ability to work.")

9

The courts are to presume that the ALJ used an incorrect standard for measuring severity at Step Two of the sequential evaluation process if the decision fails to refer to the *Stone* opinion by name or cite language of the same effect. *See Loza*, 219 F.3d at 393. A case, however, will not be remanded simply because the ALJ did not use "magic words," but remand is required where there is no indication the ALJ applied the correct standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *see also McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 835 (N.D. Tex. 2008) (indicating that the Fifth Circuit's remand mandate in *Stone* left lower courts with no discretion to conduct harmless error analysis to determine if remand was proper when the ALJ failed to apply the *Stone* severity standard). The ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error, and the claim must be remanded to the Secretary for reconsideration unless the correct standard is used. *Stone*, 752 F.2d at 1106; *see also Johnson v. Astrue*, No. H-08-3658, 2010 WL 148411 at *17 (S.D. Tex. Jan.11, 2010) (remand required where the ALJ cited to the *Stone*, but nonetheless applied incorrect standard); *Neal v. Comm'r of Soc. Sec. Admin.*, No. 3:09-CV-0522-N, 2009 WL 3856662, at *1 (N.D. Tex. Nov. 16, 2009) (Godbey, J.) (ambiguity as to whether proper legal standard was used in making severity determination must be resolved at the administrative level); *Brown v. Astrue*, No. 4-08-CV-155-A, 2009 WL 1402287 at *3-4 (N.D. Tex. May 18, 2009) (McBryde, J.) (same).

In this case, although the ALJ specifically referred to *Stone* by name, it is not clear that she applied the appropriate standard, because the language she cited in the "Applicable Law" section of her decision referenced the regulations but failed to mention the modification the Fifth Circuit set forth in *Stone*. (Tr. 14-15). Therefore, the Court must look beyond the "magic words" and read the decision of the ALJ carefully to ensure that she used the appropriate severity

10

standard in determining that none of Martinez's impairments were severe as to her disability insurance benefits claims under Title II. *See Hampton*, 785 F.2d at 1311.

Pursuant to 20 C.F.R. § 404.1520a, an ALJ must follow mandatory steps known as the "technique" when evaluating the severity of mental impairments in claimants. 20 C.F.R. § 404.1520a(a). In evaluating mental disorders under the technique, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt 4, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The regulations require the ALJ to evaluate the degree of functional loss resulting from the claimant's mental impairments. 20 C.F.R. § 404.1520a(b)(2). If an impairment is found, the ALJ must evaluate the claimant's limitations in four functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).[2] The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which

---

[2] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.*

11

generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 404.1520a(d)(1). Generally, a finding of no or mild limitations in the four functional areas leads to the conclusion that a mental impairment is not severe unless the evidence indicates differently. *See* 20 C.F.R. § 404.1520a(d)(1).

In this case, the ALJ found that Martinez suffered from the severe impairment of amputation below the knee. (Tr. 16.) She also found that Martinez's mental impairment of depression was not severe. (Tr. at 16-17.) In concluding that Martinez's mental impairment was not severe, the ALJ reviewed all of the evidence in the record, which was sparse. Based on the evidence in the record, the ALJ concluded that there was no continuous 12-month period during the relevant time period during which Martinez demonstrated more than mild limitations in her daily activities, social functioning, or concentration, persistence and pace. (Tr. 16-17.) The ALJ also concluded that Martinez had not had any episodes of decompensation of extended duration. (Tr. 17.)

Although section 20 C.F.R. § 404.1520a does not contain the severity standard set forth in *Stone*, it does, as discussed above, set forth specific steps that the ALJ is to follow in assessing mental impairments, the "technique." The ALJ followed the technique in this case in determining that Martinez's mental impairments were not severe, specifically finding that Martinez suffered from no more than mild limitations in the four functional areas set forth in the regulation. (Tr. 16-17.) The ALJ made this determination based on the evidence in the record, and, as the ALJ pointed out in her decision, there is no record of treatment for depression from Martinez's alleged onset date of January 19, 2004 through May 7, 2006. (Tr. 32.) Gallman prescribed antidepressant medication for Martinez four times during an eight month period. (Tr.

12

194, 203, 211, 215.)   But simply taking medication does not indicate any limitation on Martinez's ability to perform work activity.  *Gates v. Astrue*, 627 F.3d 1080, 1082-83 (8th Cir. 2010).

There is no credible evidence that Martinez ever sought or was referred for treatment from a mental health provider.  Nor is there evidence in the record that Martinez's depression interfered with her ability to do work during the relevant time period.  Consequently, the Court concludes, based on the *specific facts of this case*, that the ALJ's analysis of Martinez's depression under the technique, resulting in a finding that Martinez had only a mild impairment in the four functional areas, is sufficient to avoid reversal pursuant to *Stone* and its progeny.  *See Holman v. Astrue*, 2:06-CV-0238, 2009 WL 3047418, at *4 (N.D. Tex. Sept. 23, 2009) (finding that, although the ALJ failed to cite to *Stone* and only referenced Social Security Rulings that contained the *Stone* language, the ALJ's additional analysis of the plaintiff's mental impairment under the technique made "clear the ALJ found plaintiff's mental impairments were less than a slight abnormality having such minimal effect on the plaintiff that they would not be expected to interfere with her ability to work").  At least in this case, the ALJ's determination pursuant to the technique that Martinez had no severe mental impairment "is an implicit finding that her mental impairments have such minimal effect that they would not be expected to interfere with [Martinez's] ability to work, irrespective of age, education or work experience."  *Parra v. Astrue*, No. 4:07-CV-443-Y, 2009 WL 49999, at *5 (N.D. Tex. Dec. 3, 2008) (noting that the claimant "did not challenge the ALJ's finding of a non-severe mental impairment at Step Two"); *see Holman*, 2009 WL 3047418, at *4; *cf. Vinning*, 2009 WL 920192, at *5 ("A finding of *more* than mild impairment in [the claimant's] mental functioning would suggest that a severe mental

impairment existed.") (emphasis added). Thus, remand is not required in this case because the record supports the conclusion that the ALJ applied the correct severity standard at Step Two.

In addition, the ALJ's determination at Step Two that Martinez did not have a severe mental impairment is supported by substantial evidence in the record. The assessment of mild limitations in a claimant's functioning do not necessarily translate into a finding that the claimant has a severe mental impairment. *White v. Astrue*, No. 4:08-CV-415-Y, 2009 WL 763064, at *11 (N.D. Tex. March 23, 2009). In addition, the mere diagnosis of a mental impairment such as depression "says nothing about the severity of the condition." *Parra*, 2009 WL 49999, at *5 (citing *Higgs v. Bowen*, 800 F.2d 860, 863 (6th Cir. 1988) (per curiam)). Moreover, Martinez has pointed to no objective medical evidence applicable to the relevant time period that contradicts the ALJ's findings regarding Martinez's mental impairments. Finally, if the Court were to accept the position that mild limitations in a claimant's ability to function in the four functional areas in the technique must indicate a severe impairment, it would:

> have the extreme result of nullifying the Commissioner's regulations to the contrary, which provide the application of the special technique resulting in findings of no or mild limitations in the four recognized areas of functioning generally leads to the conclusion that a mental impairment is not severe unless the evidence indicates differently.

*White*, 2009 WL 763064, at *11 n.8. Because the ALJ appropriately considered and evaluated the evidence in making her severity finding and substantial evidence supports her decision, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

14

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until September 1, 2011 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SO ORDERED.
August 18, 2011.


JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE


JLC/cak

16